IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MELVIN BURRELL, #299-844,<br>            Petitioner, | *<br><br>* |
| v. | CIVIL ACTION NO.   RDB-06-1741 |
| | * |
| STATE OF MARYLAND<br>            Respondent. | *<br>****** |

**MEMORANDUM OPINION**

Now before the Court is the Amended Petition of Maryland prisoner Melvin Burrell for Writ of Habeas Corpus (Paper Nos. 1, 3, 4 and 7), the State's answer thereto (Paper No. 19), and Petitioner's replies. Nos. 23, 24, and 25.[1] After review of these papers, the Court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; see also* 28 U.S.C. Section 2254(e)((2). For the reasons that follow, the Petition will be denied and dismissed with prejudice.

**Procedural History**

Petitioner and Cozette Shelton were charged by information in the Circuit Court for Baltimore City with possession of heroin, possession of heroin with the intent to distribute, conspiracy to distribute heroin, conspiracy to possess heroin with the intent to distribute, and conspiracy to possess heroin. Paper No. 19, Ex. 1, Ex. 9. After a jury trial held from January 29, 2001 to February 1, 2001, Petitioner was convicted of possession of heroin, possession of heroin with the intent to distribute, and conspiracy to distribute heroin.

---

[1]Petitioner has titled his responses to Respondent's Answer as Motions to Deny Respondent's Motion to Dismiss. To the extent Petitioner intended the documents be construed as motions they shall be denied.
      Also pending is Respondent's Motion for Extension of Time to file its Answer. Paper No. 18. The Motion shall be granted *nunc pro tunc*.

The facts adduced at trial, as described by the Maryland Court of Special Appeals, were as follows:

> Detective Allen Adkins testified that, on January 7, 2000, while located in an abandoned building, he surveilled the corner of North Avenue and Longwood Street in Baltimore City. Detective Adkins observed appellants and a man in a green coat engaged in what he believed to be the street-level sale of narcotics. As a result, an "arrest team" was called to raid and apprehend the group. The man in the green jacket escaped, but appellants were arrested and searched both at the scene and at the police station. The search of Burrell resulted in the recovery of $482, but no drugs or weapons. Burrell testified that he was gainfully employed on January 7, 2000, that he was at North Avenue and Longwood Street for innocent purposes, and that he was not selling drugs.
>
> Detective Vicky Mengel testified that she performed a "female search" of Shelton at the police station and recovered a plastic bag which was partially inserted into her vagina. Various police officers and a chemist testified that the bag contained fourteen units of heroin. Shelton, however, testified that the bag contained only six units, which she had just purchased for personal use. She denied that she was selling heroin or working with Burrell.
>
> On the day of the hearing on the pre-trial motions, one day prior to trial, appellants filed a motion in limine to suppress Detective Mengel's testimony on the ground that the State had just disclosed her identity as a witness. At the motions hearing, the prosecutor explained to the court that she was wholly unaware of Detective Mengel's involvement in the case until just a few days before trial when Shelton's counsel revealed Detective Mengel's involvement to her.[1] When the prosecutor learned this information from appellants' counsel, she immediately added Detective Mengel as a witness. The prosecutor indicated that she was amenable to postponement in order to allow appellants' counsel to interview Detective Mengel; the trial court, however, declined the State's offer and gave appellants' counsel the opportunity to interview Detective Mengel when she arrived that day to testify. After her arrival, Detective Mengel was subject to extensive cross-examination by Shelton's attorney. At the conclusion of the pretrial motions hearing, the court denied appellants' motion.
>
> At trial, Detective Adkins was accepted as an expert in the street-level sale, identification, and packaging of narcotics in Baltimore City. Detective Adkins testified that a manner of transporting narcotics to a location for street-level distribution is by concealing them "on your person, on your body somewhere be it your shoes, your socks, or your groin area." He further described the different roles of persons and customs typically involved in a street-level drug distribution scheme.

2

Regarding his surveillance of appellants on January 7, 2000, Detective Adkins testified that a man in a green jacket walked on the street, yelling "Stone cold out" and "Stone cold"; he recognized this language as advertising for the type of heroin available for sale at that particular time. According to Detective Adkins, the third person would take any prospective buyer to Burrell, who collected the money. After Burrell accepted money, the group would collectively walk down the street toward Shelton, who held the distributed drugs. Detective Adkins described the scene:

> Shelton would be further down the street, about 50 feet or thereabouts. They would meet up; Burrell, Shelton, and the buyers. It appeared that Burrell was overseeing Shelton divvying out the–correct amount.

When asked whether Shelton was dealing out of a pocket of a coat, Detective Adkins replied:

> No. It was always reaching into her groin. And the one time she turned, I could actually see the plastic bag. And after the sales were conducted-well, not that she knew it, but her back was to me and I could remember her putting it back in, but this time she just seemed to really jam it down in.
>
> Because I remember her going like this and making a motion with her leg trying to get it down in there. That--that stood out.

In summarizing his testimony and observations from the date of the arrests, Detective Adkins stated:

> Based on the-based on my experience, based on the observations, the quantity, the manner of packaging and concealment, I believe, and the observations as well, I believe that they were for street level distribution or drug sales on the street.

During her first appearance before the court, prior to trial, Shelton admitted that she was guilty of simple possession and her counsel stated that Shelton pled guilty to possession of cocaine but not guilty as to the remaining counts. According to Shelton, the trial judge, however, never entered a finding of guilty and Shelton did not waive her rights to a jury trial, confront her witnesses, or put on a defense with respect to that charge. At trial, the judge recalled that Shelton previously pled guilty to the simple possession charge, despite her initial insistence to the contrary. Subsequently, because he believed that there was no issue as to the count of possession as a result of the guilty plea, the trial judge submitted only the remaining four counts to the jury, although Shelton requested

3

that the simple possession charge be submitted to the jury.

***

During cross-examination, the State questioned Burrell about three prior convictions for burglary in 1991 and 1992, in an attempt to impeach his testimony. Burrell's counsel objected to the State's initial question on the topic, but, afer a bench conference, the judge permitted the line of questioning. Shortly thereafter, when the State offered into evidence three copies of the docket entries, as evidence of the convictions, Burrell's counsel did not object to their admission.

As part of his charge to the jury, the trial judge refused to instruct the jury that mere presence at the scene of a crime is insufficient to established guilt. Counsel for both appellants excepted to the judge's decision; the court responded, "all right. Anything else?"

---

[1]The prosecutor stated that she had recently received the case file from a different attorney, and that [sic] turnover, there was no discussion of Detective Mengel. The prosecutor also stated that Shelton's counsel had been aware of Detective Mengel's involvement for approximately one year -since around the date of the arrest.

Paper No. 19, Ex. 9, pp 2-7.

After conclusion of the case and deliberation by the jury, Petitioner was convicted of possession of heroin, possession of heroin with the intent to distribute, conspiracy to possess heroin, conspiracy to possess heroin with the intent to distribute, and conspiracy to distribute heroin. *Id.,* Ex. 5 at 133-39. Petitioner was sentenced in absentia, on February 7, 2001, to twenty years incarceration, the first ten years to be served without parole. *Id.*, Ex. 9 at 1.

Petitioner filed a joint appeal with Co-Defendant Shelton. They raised the following claims:

1. Did the trial court err in refusing to submit to the jury the count of possession of heroin as to Ms. Shelton?

2. Did the trial court err in refusing to instruct the jury that mere presence at the scene of the crime is insufficient to establish guilt?

      3.      Did the trial court err in permitting the State to impeach Burrell's credibility with three prior convictions for burglary?

      4.      Were appellants properly convicted of three counts of conspiracy in the absence of evidence establishing multiple agreements?

      5.      Did the trial court err in failing to preclude the testimony of a prosecution witness whose identity was not disclosed until the eve of trial?

      6.      As to Burrell, was the evidence legally sufficient to sustain the conviction?

*Id.,* Ex. 7 at 2. Petitioner's convictions for conspiracy to possess heroin with the intent to distribute and conspiracy to possess heroin were vacated by the Maryland Court of Special Appeals on December 13, 2001. His convictions were upheld in all other respects. *Id.,* Ex. 9. The Court of Appeals of Maryland denied Petitioner's request for a writ of certiorari, wherein he raised the same six questions resolved by the lower appellate court. *Id.*, Ex. 10-11.

      In the original and amended Petitions, Petitioner sought post-conviction relief in the Baltimore City Circuit Court, alleging that trial counsel was ineffective for failing to: (1) object to the testimony of Detective Mengel, who was not identified as a witness until the eve of trial; (2) object to the chain of custody form; (3) challenge defects in the charging document; (4) object to an illegal search; (5) make a motion for a judgment of acquittal with sufficient particularity to preserve a challenge to the sufficiency of the evidence underlying his convictions; and (6) object to the State's use of his prior convictions for purposes of impeachment. Petitioner also alleged that he was entitled to a new sentencing hearing based on either trial court error or ineffective assistance of counsel. Paper No. 1; Paper No. 19. Based on representations made at the post-conviction hearing held on April 5, 2005, the court construed Petitioner to be requesting review of the following issues:

5

  (1)  Trial counsel was ineffective for failing to object to the testimony of Detective Vicki Mengel, a witness whose identity was not disclosed in a timely manner;

  (2)  Trial counsel was ineffective for failing to move for a judgment of acquittal with sufficient particularity;

  (3)  Trial counsel was ineffective for failing to object to the prosecution's use of his prior convictions for impeachment purposes; and

  (4)  Petitioner was entitled to sentencing relief based on trial court error or ineffective assistance of counsel.

*Id.*, Ex. 30. The circuit court denied relief in an opinion and order dated June 22, 2005. *Id.*

Petitioner filed an application for leave to appeal the post-conviction ruling, alleging that trial counsel was ineffective for failing to: (1) object to the testimony of Detective Vicki Mengel, a witness whose identity was not disclosed in a timely manner; (2) move for a judgment of acquittal with sufficient particularity; (3) object to the prosecution's use of his prior convictions for impeachment purposes; (4) object to the chain of custody of the drugs at issue; (5) object to defects in the charging document; and (5) object to an unreasonable search. He further alleged that he was entitled to sentencing relief based on trial court error and ineffective assistance of counsel and that his post-conviction counsel was ineffective. *Id.* Ex. 31. The Maryland Court of Special Appeals summarily declined to review Petitioner's case. *Id.* Ex. 32.

In this habeas corpus action, his first in federal court, Petitioner asserts that he was denied equal protection of the law and due process when the Court of Special Appeals of Maryland denied his application for leave to appeal and when the state post-conviction court did not address each issue raised in his post-conviction petition. He further claims that the evidence was insufficient to sustain his conviction and that his post-conviction counsel was ineffective. Petitioner states that his trial counsel was ineffective for failing to: (1) object to the testimony of Detective Vicki Mengel,

6

a witness whose identity was not disclosed in a timely manner; (2) object to the chain of custody of the drugs at issue; (3) object to an illegal search; (4) make a sufficient motion for a judgment of acquittal so as to preserve an appellate challenge to the sufficiency of the evidence; and (5) object to the charging document. Paper No. 1.

## I. Threshold Considerations

### A.  Exhaustion of State Remedies

Under *Rose v. Lundy*, 455 U.S. 509 (1982), before a petitioner may seek habeas relief in federal court, he is required to exhaust each claim presented to the federal court by pursuing remedies available in state court.  This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim.  *See* 28 U.S.C. § 2254(b) and (c).  In Maryland, this may be accomplished by proceeding with certain claims on direct appeal to the Court of Special Appeals (and thereafter seeking certiorari to the Court of Appeals) and with other claims by way of a post-conviction petition, followed by seeking leave to appeal from the Court of Special Appeals.  Petitioner no longer has any direct or collateral review remedies available to him with respect to the claims raised in this Court.  Accordingly, his claims will be considered  exhausted for the purpose of federal habeas corpus review.

### B. Statute of Limitations

There is no contention that the Petition is time-barred pursuant to 28 U.S.C. §2244(d).

### C.  Procedural Default

In its answer, Respondent states that Petitioner is procedurally defaulted from asserting claims that: (1) trial counsel rendered ineffective assistance by failing to challenge the chain of custody of the drugs seized from Shelton or to object to an illegal search; (2) trial counsel rendered

ineffective assistance by failing to move to dismiss his case based on a defective charging document; and (3) the evidence was insufficient to sustain his conviction.  Paper No. 19.

The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971).  In *Wainwright v. Sykes*, 433 U.S. 72 (1977), the Court held that consideration of a claim in a petition for habeas corpus can be barred by failure to comply with state procedural rules, unless the petitioner makes a showing of cause for the failure and prejudice resulting from the failure.  Thus, claims which have never been presented in the state courts--or claims which were not exhausted properly in the state courts--are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules.  *See Collier v. Jones*, 910 F.2d 770 (11th Cir. 1990). This procedural bar applies when the state court has found procedural default regardless of whether it has also discussed the merits, as long as the court has explicitly invoked state procedural rule as the basis for its decision.  *See Harris v. Reed*, 489 U.S. 255, 264, n.10 (1989); *Ahe v. Styles*, 39 F.3d 80 (4th Cir. 1994).  The *Harris* Court emphasized that a federal court has the responsibility to determine whether a state court in fact based its denial of relief on procedural grounds.

Respondent is correct in asserting that the post-conviction court held that Petitioner had abandoned his claims that he was denied effective assistance when trial counsel failed  to: (1) challenge the chain of custody of the drugs seized from Shelton; (2) object to an illegal search, and (3) move to dismiss Petitioner's case based on a defective charging document. *Id*., Ex. 30.  In independently reviewing the record, this Court finds however, that the post-conviction court's determination was in error.  The transcript of the post-conviction hearing demonstrates that testimony was taken and argument was made as to each of these claims and that Petitioner did not

8

intend to abandon the claims. *Id.*, Ex. 29. Accordingly, this Court does not find that these claims have been procedurally defaulted.

This Court does agree with Respondent that Petitioner's claim regarding insufficiency of the evidence has been procedurally defaulted in as much as the Maryland Court of Special Appeals specifically found that this claim had been waived. *Id.*, Ex. 9, p. 21.

Even where a claim has been procedurally defaulted, this Court must still consider whether it should reach the merits of the defaulted claim in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298 (1995). The miscarriage of justice standard is directly linked to innocence. *Id.* at 320. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id.* at 314. The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schlup*, *supra*. To meet this standard a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 327.

> *Schlup* observes that
>
> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial.

*Id.* at 323.

On January 10, 2007, this Court afforded Petitioner an opportunity to demonstrate the cause for his failure to properly raise his claims in the state courts and prejudice resulting from this failure.

9

Paper No. 21. In response, Petitioner essentially repeated his claims.[2] Thus he has failed to make the requisite showing which would enable this Court to consider his defaulted claims and he has presented no evidence, nor suggested that any exists, which could satisfy the difficult standard set forth in *Schlup*. Petitioner's procedurally defaulted claims are, therefore, foreclosed from federal habeas review.

## II. Analysis of Petitioner's Undefaulted Claims

### A. Standard of Review

Because the Petition was filed after April 24, 1996, it will be decided under amendments to the habeas corpus statutes contained in Anti-terrorism and Effective Death Penalty Act (AEDPA). *See Brown v. Angelone*, 150 F.3d 370 (4th Cir. 1998). Under the AEDPA, federal courts conducting habeas corpus review no longer can correct mere error in state court proceedings, but must instead exercise a more limited review set forth in 28 U.S.C. § 2254(d)(1) and (2)(as amended). Section 2254(d) now provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), the Supreme Court characterized Section 2254(d) as a "new, highly deferential standard for evaluating state court rulings." In

---

[2] Petitioner's meritless claim that the evidence was insufficient to sustain his conviction is discussed further in this Memorandum Opinion in the context of his ineffective assistance claim.

*Williams v. Taylor*, 529 U.S. 362, 407-08 (2000), Justice O'Connor, speaking for the majority, further elucidated:

> Section 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under Section 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to...clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of...clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412-413. Justice O'Connor indicated that "the phrase 'clearly established Federal law, as determined by the Supreme Court of the United States'...refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore, she indicated that:

> [u]nder Section 2254(d)(1)'s 'unreasonable application clause...a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id*. at 411. In other words, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 410. A state court decision involves an "unreasonable application" of

Supreme Court precedent if the court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," *id.* at 407-08, or "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled." *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000); *see also Booth v. Nuth*, 288 F.3d 571 (2002).

The Court reaffirmed and applied these standards in an ineffective assistance of counsel context in *Bell v. Cone*, 535 U.S.685 (2002). It explained:

> For respondent to succeed, however, he must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. See *Williams,* supra, at 411. Rather, he must show [the state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner.

*Id.* at 698-9.

In reviewing Petitioner's attack on his state court convictions, the Court presumes that factual determinations made by the state court are correct. Petitioner bears the burden of rebutting this presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

With these standards in mind, the Court considers the undefaulted claims now before this Court.

### Claim of Post Conviction Court Error

Petitioner claims that he was denied equal protection of the law and due process when the Court of Special Appeals of Maryland denied his application for leave to appeal the denial of post-conviction relief and when the state post-conviction court did not address each issue raised in his post-conviction petition. He further alleges that his post-conviction counsel was ineffective.

Defects in collateral proceedings are not a basis for federal habeas corpus relief. *Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998) (citing *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988)). Accordingly Petitioner's claims fail.

### Claim of Ineffective Assistance of Trial Counsel

To establish a claim of ineffective assistance of trial counsel, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). With regard to the first prong of this test, this Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. All circumstances are to be considered, and this Court's scrutiny of counsel's conduct must be "highly deferential." *Id*. at 688-89. Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

**A. Counsel's Failure to Object to Testimony of Detective Vicki Mengel**

Petitioner contends that he was denied effective assistance of counsel when counsel failed to object to the testimony of Detective Vicki Mengel, who was not disclosed as a State's witness until the day prior to trial. In rejecting this claim the post-conviction court found as follows:

> Just prior to the motions hearing, at approximately 10:00 am on the first day of trial, both defense counsel objected to the testimony of Detective Vicki Mengel, and asked that she not be permitted to testify. Motions Transcript 6-7. Detective Mengel was not originally listed on the State's witness list, but her name was given to the defense just before trial. *Id*. To cure the problem, the State offered to postpone the trial. Motions Transcript 10. Judge Ross suggested

13

he would give defense counsel time to interview Detective Mengel prior to her testimony, and then proceed with the motions hearing and trial. Motions Transcript 10-11. Judge Ross also advised defense counsel that if the additional time to interview Detective Mengel did not remedy the problem, he would "be glad to hear whatever the parties have to say." Motions Transcript 11. Prior to Detective Mengel's testimony at 2:01 pm, neither defense counsel notified the Court that the time allotted to interview Detective Mengel was not an effective remedy. Petitioner argues his counsel's failure to object when Detective Mengel took the stand at trial rendered his assistance of counsel ineffective....

Relief on this allegation is denied. Though trial counsel did not preserve the issue for appeal, his assistance was not ineffective.

Trial counsel renders ineffective assistance of counsel when he or she fails to preserve or omit a claim on direct appeal that would have a substantial likelihood of resulting in the reversal of the conviction. *Gross v. State,* 371 Md. 334, 350 (2002). If there is no reasonable likelihood that the appellate court would have reversed the conviction, there is not *Strickland* prejudice. *Id.*, at 348. "The crucial inquiry is whether confidence in the reliability of the conviction is undermined by the failure to preserve or raise the claims on appeal." *Id.* at 351, citing *Lockhart v. Frewell*, 506 U.S. 364, 369 (1993).

In this case, trial counsel objected during the motions hearing, but failed to object when the witness took the stand. Counsel was required to raise an objection in order preserve the issue for appeal. *Klauenberg v. State*, 355 Md. 538, 539-40 (1999). However simply because the issue was not preserved for appeal does not mean counsel has rendered ineffective assistance.

It is eminently clear from Judge Ross' ruling on counsel's objection to Detective Mengel's testimony during the motions hearing that he was not going to sustain any further objection to her testimony during the trial. Therefore, counsel's refraining from raising an objection may in fact have been a strategic decision. At times, counsel refraining from further objection can be an appropriate trial strategy. *Beverly v. State*, 349 Md. 106 (1998). As a result, trial counsel's failure to object a second time does not constitute unreasonable professional judgment.

Furthermore, even if trial counsel had objected at the time of Detective Mengel's testimony, it is unlikely that the preservation of this issue for appellate review would have resulted in a reversal of Petitioner's conviction. Trial counsel objected to the testimony before the motions hearing began. To remedy the situation, Judge Ross gave trial counsel time to interview Detective Mengel. Trial counsel had ample opportunity to ask questions of the detective before she took the witness stand, and was presumably satisfied with the resolution provided

> by Judge Ross since neither defense counsel asked for additional time or a postponement of the case prior to Detective Mengel's testimony on the afternoon of the motions hearing.
>
> Similarly, in *Miller v. State*, 53 Md. App. 1, 12 (1982), the Court of Special Appeals affirmed the conviction of a criminal defendant who alleged on appeal that the trial judge committed reversible error when he permitted the State to call a particular witness, though the witness's name had not been revealed during discovery. In *Miller*, the State failed to provide the defense the name of a witness who was to be called at trial. *Id*. At 13. To remedy the situation the Court recessed to give defense counsel an opportunity to interview the witness. *Id*. In addition, the Court stated, "If you have any problems when you talk to him bring them before the court." *Id*. After the recess, defense counsel never raised any problems with the witness, nor did the defense suggest the necessity for the implementation of any of the remedies available to the Court under the Maryland Rules. *Id*. Deeming the judge's allowance of time for counsel to interview the witness to be appropriate, the appellate court found no reversible error.
>
> Comparing the facts of *Miller* to the fact of the instant case, it is unlikely that an objection made by trial counsel just before Detective Mengel took the witness stand at trial would have ultimately resulted in a not guilty verdict. Thus, even assuming arguendo that the decision trial counsel made not to object to the testimony of Detective Mengel constituted an unreasonable exercise of counsel's professional judgment and was not based on trial strategy, the second prong of the *Strickland* test is not satisfied. There is no evidence that an objection to the testimony would have lead to a different result.

Paper No. 19, Ex. 30, p. 4-7.

Having examined the post-conviction court's ruling and having independently examined the record, this Court is satisfied that in applying the *Strickland* standard to the instant allegations of trial counsel's allegedly deficient performance, Petitioner has not demonstrated the prejudice necessary to establish his trial attorney's ineffectiveness. *See* 28 U.S.C. § 2254(d); *see also Stamper v. Muncie*, 944 F.2d 170, 178 (4th Cir. 1991) (challenge to counsel's trial decisions and/or tactics amounted to no more than "Monday morning quarter backing."). The post-conviction court's rejection of Petitioner's claim was neither contrary to clearly-established federal law, nor involved an unreasonable application of that law. Moreover, the record reflects that Mengel was not a

15

surprise witness, and that counsel was given an opportunity to interview Mengel prior to her testifying. *Id.*, Ex. 2 at 10-11. The state court's recitation of the facts surrounding the testimony of Detective Mengel are supported by the record before this Court. Accordingly, the state court's decision shall not be disturbed.

### B. Claim of Counsel's Failure to Object to the Chain of Custody and Failing to Object to an Illegal Search

Trial counsel moved to suppress the currency seized from Burrell and his motion was heard in conjunction with the motion to suppress the evidence seized from Co-Defendant Shelton. During the hearing, defense counsel challenged the credibility of the police officers, the chain of custody of the evidence, and the propriety of the arrest and search of both Burrell and Shelton. The trial court found the State's version of events more credible and denied the suppression motions. Additionally, throughout trial, counsel challenged the chain of custody of the drugs seized from Shelton. Having examined the post-conviction court's ruling and having independently examined the record, this Court is satisfied that in applying the *Strickland* standard to the instant allegations of trial counsel's allegedly deficient performance, Petitioner has not demonstrated the prejudice necessary to establish his trial attorney's ineffectiveness. *See* 28 U.S.C. § 2254(d). *Stamper v. Muncie*, 944 F.2d 170, 178 (4th Cir. 1991).

### C. Claim of Ineffective Assistance of Trial Counsel in Failing to Make a Sufficient Motion for Judgment of Acquittal

Petitioner complains that counsel failed to make an adequate motion for judgment of acquittal so as to preserve his appellate challenge to the sufficiency of the evidence. In rejecting this claim, the state post-conviction court found as follows:

> Petitioner's trial counsel moved for judgment of acquittal at the close of the State's case and at the close of all of the evidence. Trial Transcript, Fe. 1,

2001 29, 88. However, trial counsel did not state with particularity reasons why the motion should be granted....

Relief on this allegation is denied. Though trial counsel failed to properly move for judgment of acquittal, his assistance was not ineffective.

Under Md. Ann. Code, Crim. Pro. § 6-104, a defendant may move for judgment of acquittal at the close of the State's case and at the close of all the evidence. In moving for judgment of acquittal, the defendant must state with particularity all reasons why the motion should be granted. *See* Maryland Rule 4-324(a); *State v. Lyles*, 308 Md. 129, 135 (1986). This section and Maryland Rule 4-324 have been construed to preclude appellate review of the sufficiency of the evidence, in a criminal case tried before a jury, where the defendant failed to move for judgment of acquittal at the close of all of the evidence. *Dumornay v. State*, 106 Md. App. 361 (1995). Where no motion for judgment of acquittal was made at any stage of the trial there could be no review of the sufficiency of the evidence on appeal, since such review in a criminal case tried before a jury is predicated on the refusal of the trial court to grant a motion for judgment of acquittal. *Williams v. State*, 131 Md. Ap. 1 (2000). However, if the Court denies a defendant's motion for judgment of acquittal, no objection to that ruling is required. Maryland Rule 4-324.

The standard of review for a motion for judgment of acquittal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Briggs v. State*, 348 Md. 470, 475 (1998), citing *Jackson v. Virginia* 443 U.S. 307, 319 (1979). However, the court does not "inquire into the credibility of witnesses, or weigh the evidence to ascertain whether the State has proven their case beyond a reasonable doubt; that is the responsibility given to the trier of fact." *Id.*

Petitioner's trial counsel moved for judgment of acquittal at both the end of the State's case and the close of all of the evidence, but did not provide the Court with reasons why the motion should be granted. Petitioner argues that because trial counsel did not make these motions with particularity, the motion was not preserved for appeal. This is correct. However, even if trial counsel objected to the sufficiency of the evidence with particularity, it is highly unlikely that Judge Ross would have granted the motion.

Under Maryland law, except as otherwise provided by statute, a person may not possess or administer to another a controlled dangerous substance. Md. Ann. Code, Crim. Law §5-601.[1] Moreover, the statute provides that a person may not "possess a controlled dangerous substance in sufficient quantity reasonable to indicate under all circumstances an intent to manufacture, distribute, or dispense a

17

> controlled dangerous substance." Md. Ann. Code, Crim. Law §5-602.[2] A conspiracy is a combination of two or more persons to accomplish a criminal or unlawful act, or to do a lawful act by criminal or unlawful means. *Quaglione v. State*, 15 Md. App. 571 (1972).
>
> By representing the testimony of several police officers and a chemist and by admitting the chain of custody and laboratory report, the State provided the jury with enough evidence to consider the guilt or innocence of the Petitioner. At trial, the State offered expert testimony from Detective Adkins as to street-level sale, identification and packaging of narcotics in Baltimore City. Detective Adkins testified about the transactions he witnessed while performing surveillance on January 7, 2000. *Id*. Though Petitioner suggests that the testimony of the various police officers provided inconsistent information and that his employment information would have provided the jury with information contrary to the State's case, the record does not reveal that the State failed to provide the jury with evidence necessary to consider the case. Petitioner's allegations relate more to the weight of the evidence, rather than to the sufficiency of the evidence. Because the weight of the evidence is a jury determination separate from the issue of the Court's determination of the sufficiency of the evidence vis-a-vis a motion for judgment of acquittal, Petitioner's allegation fails.

Paper No. 19, Ex 30, p. 7-10 (footnotes omitted).

Petitioner's claim that trial counsel erred in failing to preserve for appellate review the sufficiency of the evidence, is without merit. Assuming that it was error on the part of trial counsel to fail to move for judgment of acquittal with sufficient specificity, Petitioner has failed to demonstrate prejudice as a result of counsel's actions. In determining whether there is sufficient evidence to support a conviction, the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). The fact finder, rather than the reviewing court, is charged with "resolv[ing] conflicts in the testimony, [weighing] the evidence, and [drawing] reasonable inferences from basic facts to ultimate facts." *(Id.)* Circumstantial as well as direct evidence must be considered and the government must

18

be given the benefit of all reasonable inferences. *See United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982).   Circumstantial evidence can be sufficient to support a conviction. *See Stamper v. Muncie*, 944 F.2d 170, 174 (4th 1991).

The post-conviction court found that even if counsel had preserved the issue of the sufficiency of the evidence for appellate review, the challenge would have failed because there was sufficient evidence to sustain the conviction. The state court's recitation of the facts, as adduced at trial, is supported by the record. The state court correctly applied *Strickland* in finding no prejudice as a result of any error on the part of defense counsel in failing to properly preserve the issue of sufficiency of the evidence for appeal. Even assuming that counsel failed to properly preserve this issue, Petitioner has failed to demonstrate that such deficient performance rendered "the result of the trial unreliable or the proceeding fundamentally unfair." *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Accordingly, the state court's decision shall not be disturbed. *See* 28 U.S.C. §2254(d) and (e).

### D. Claim of Ineffective Assistance of Trial Counsel in Failing to Object to Defective Charging Documents

Petitioner's claim that trial counsel failed to move to dismiss the case based on a defective charging document is also without merit. Under Maryland law, Petitioner was subject to being tried by an information filed by the State's Attorney because he was charged with a felony and waived his preliminary hearing. *See* Md. Rule 4-201. All of Petitioner's charging papers conformed with Maryland law. Moreover, as Petitioner's argument is based upon state law, it is not subject to review by this Court. *See Spencer v. Murray*, 18 F.3d 237, 239-40 (4th Cir. 1994).

### III. CONCLUSION

Upon review of each of Petitioner's undefaulted claims, and the exhibits provided by the State and Petitioner, it is clear that he cannot sustain the burden required by 28 U.S.C. § 2254(d). The decision of the state post-conviction court represents sound legal reasoning as well as a reasonable application of well-established law. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Petitioner cannot show that his trial counsel's performance was constitutionally deficient, nor can he establish that any alleged deficiency so prejudiced him that a different result would have occurred but for that deficiency.

For this reason, his Petition must be dismissed. A separate Order shall be entered reflecting the foregoing Memorandum Opinion.

June 18, 2007                                /s/
                                            _____
                                            RICHARD D. BENNETT
                                            UNITED STATES DISTRICT JUDGE